JAMES BERGMAN, A MINOR, BY HIS NEXT FRIEND AND MOTHER,
PHYLLIS HARRE, APPELLEE, V. ROYCE ANDERSON, APPELLANT.
411 N.W.2d 336

Filed August 28, 1987.    No. 85-825.

Gregory R. Abboud, for appellant.

Raymond J. Hasiak, for appellee.

BOSLAUGH, WHITE, HASTINGS, CAPORALE, SHANAHAN, and
GRANT, JJ., and COLWELL, D.J., Retired.

PER CURIAM.

On the evening of October 16, 1983, James Bergman and his girlfriend stopped at a gas station near 84th Street and West Center Road in Omaha. As Bergman started to drive from the gas station, Royce Anderson drove into the station and parked his van in front of Bergman's car, blocking Bergman's exit. Anderson got out of his van and was accompanied by his three teenage sons and four of their friends. Anderson and his teenage companions, carrying baseball bats, approached Bergman's automobile and began beating on the hood with their bats. Anderson's group had been tracking Bergman because of a previous dispute between Bergman and one of Anderson's sons. After someone broke out the driver's side window, Anderson reached into the car, grabbed Bergman around the neck, and pulled him out of the car and onto the pavement. Anderson punched Bergman in the back of the neck and jaw and held Bergman down on the pavement while Anderson's companions kicked him. At trial, Anderson denied hitting Bergman, but claimed his actions in pulling Bergman out of the car were to protect him from the seven other individuals. As a result of the attack, Bergman was left bleeding from his nose and mouth and sustained injuries to his head and back. Bergman's car also sustained damage, including a broken windshield, broken headlights, and numerous dents.

In his petition, Bergman alleged:

> That on the 16th day of October, 1983 at the vicinity of 84th and Center Streets the Defendant and certain minor children under the Defendant's direction did unlawfully and without provication [sic] did assault the Plaintiff by striking him on the head and grabbing him behind the head and dragging him out of the car. After being dragged out of the car the Plaintiff was struck again by the Defendant on the head and side. As . . . a result of the assault by the Defendant and minors under the Defendant's direction the Plaintiff has suffered severe pain and mental anguish and the Plaintiffs [sic] body was badly bruised and injured.

Bergman also alleged in his petition that as a consequence of the attack, he incurred medical expenses in the amount of

$216.55 and repair costs to his automobile in the amount of $923. At trial, a witness, testifying on behalf of Bergman and over Anderson's objection, testified that the actual repair cost would be approximately $2,000. Bergman requested that the court enter judgment for the specifically enumerated amounts, as well as for damages for mental anguish and pain and suffering.

After Bergman adduced evidence, Anderson unsuccessfully moved for a directed verdict, alleging that Bergman's petition failed to state a cause of action under the theory that Anderson acted in concert with others and aided and abetted in the commission of an assault or battery. Following the adduction of evidence, the trial court, over objection, gave the following "assault" and "battery" instruction:

> "Assault" may be defined as a wrongful offer or attempt, with unlawful force or threats, made in a menacing manner, to inflict bodily injury upon another, with the present apparent ability to give effect to the attempt.
>
> "Battery" may be defined as any intentional, unlawful physical violence or contact inflicted on a human being without his consent. The word "battery" also includes within its meaning "assault" as above defined.
>
> Any unlawful or unjustified striking of another is an assault and battery, for the direct consequences of which the party guilty thereof is liable in damages.

Over Anderson's objection, the court also instructed the jury on the theory of aiding and abetting, using an instruction substantially similar to that contained in NJI 14.12, and providing in part:

> Aiding and abetting involves some participation in the unlawful act and must be evidenced by some word, act, or deed. No particular acts are necessary, nor is it necessary that any physical part in the commission of the unlawful act is taken or that there was an express agreement therefor. *Mere encouragement or assistance is sufficient.*

(Emphasis supplied.) Following jury deliberation, the jury returned a general verdict, on which judgment was entered, in the amount of $8,000.

Anderson now appeals to this court and alleges that the district court erred in (1) instructing the jury on the definitions of "assault" and "battery"; (2) allowing the jury to be instructed on the theory that Anderson acted in concert with others and aided and abetted in the commission of an assault or battery, when Bergman's petition does not allege such theory; (3) instructing the jury regarding a definition of aiding and abetting; and (4) allowing Bergman's witness to testify as to the repair cost of Bergman's car in an amount in excess of the cost of repair pled in Bergman's petition.

Regarding Anderson's first assignment of error, Anderson contends that the trial court incorrectly instructed the jury regarding the law of "assault and battery" and that his tendered instruction, "[t]hat assult [sic] and battery is a physical touching with intent to inflict bodily injury," should have been given.

First, Anderson misinterprets the law regarding the intentional torts of battery and assault. Battery and assault are separate torts resulting from a defendant's intentional actions directed toward another. See Prosser and Keeton on the Law of Torts, *Intentional Interference with the Person* §§ 8 through 10 (5th ed. 1984). A battery requires "an actual infliction" of an unconsented injury upon or unconsented contact with another. See *Newman v. Christensen*, 149 Neb. 471, 31 N.W.2d 417 (1948). In contrast, we have characterized the intentional tort of assault as a " 'wrongful offer or attempt with force or threats, made in a menacing manner, with intent to inflict bodily injury upon another with present apparent ability to give effect to the attempt,' " without requiring that the one assaulted be subjected to any actual physical injury or contact. *Crouter v. Rogers*, 193 Neb. 497, 499, 227 N.W.2d 845, 847 (1975). See Prosser and Keeton, *supra* at § 10 (no actual contact is necessary to establish the intentional tort of assault). See, also, 6 Am. Jur. 2d *Assault and Battery* § 3 (1963); 6A C.J.S. *Assault & Battery* §§ 3 and 4 (1975). To the extent Anderson's tendered instruction treated battery and assault as one and the same, which they are not, such tendered instruction was an incorrect statement of the law, which was properly rejected by the trial court.

Second, Anderson contends that "intent to cause bodily injury," necessary for proper instruction regarding an assault, see *Crouter v. Rogers, supra,* was omitted from the instruction given by the trial court. Both the intentional tort of battery and the intentional tort of assault require an intent which may be shown by proof that the defendant intended to physically injure or contact another or intended to cause apprehension that such physical injury or contact is imminent. See Prosser and Keeton, *supra* at §§ 9 and 10. However, such intent contemplates only the intent to cause physical contact or injury or arouse an apprehension of imminent injury, as the assailant need not intend the precise or particular injury which followed as the result of the assault or battery. See *Morfeld v. Weidner,* 99 Neb. 49, 154 N.W. 860 (1915). Cf. *State v. Ristau,* 201 Neb. 784, 786, 272 N.W.2d 274, 276 (1978), "It is not essential to a conviction for assault with intent to do great bodily injury that the accused should have intended the precise injury which followed as the result of the assault. It is sufficient if serious bodily harm of any kind was contemplated." The trial court's instruction on "assault" included the language "wrongful offer or attempt" at an "unlawful or unjustified striking of another." In its ordinary use, an offer includes "an action or movement indicating a purpose or intention of doing something." Webster's Third New International Dictionary, Unabridged 1566 (1981).

"Prejudicial error regarding jury instructions may not be predicated solely upon a particular sentence or phrase in an isolated instruction, but must appear from consideration of the entire instruction of which the questioned sentence or phrase is a part, as well as consideration of other relevant instructions given to the jury. . . . ' " 'All the instructions must be read together and if the instructions taken as a whole correctly state the law, are not misleading, and adequately cover the issues, there is no prejudicial error.' " ' "
*State v. Copple,* 224 Neb. 672, 699, 401 N.W.2d 141, 159 (1987). See, also, *First West Side Bank v. Hiddleston,* 225 Neb. 563, 407 N.W.2d 170 (1987). Reviewing the instructions as a whole, we find that the jury was correctly instructed concerning the element of intent required in the tort of assault.

Regarding Anderson's second and third assignments of error, because they both relate to questions regarding the same legal theory, we address them conjunctively.

> Plaintiffs-Appellants invoke the settled principles of law covering concerted wrongful action: that in addition to persons who actually participate in an assault and battery, persons who aid, abet, or procure the commission thereof, are subject to a civil action therefor; that on the theory that the act of one is the act of all, the rule of joint and several liability of tort feasors prevails where the tort feasors act in concert or unity of action, and, therefore, applies to tort feasors who intentionally unite in the wrongful act or who are present, assist, or participate therein; and that where two or more persons engage in a common enterprise, they are jointly liable for wrongful acts done in connection with that enterprise, at least where the enterprise is an unlawful one, in which case all are answerable for any injury done by any one of them, although the damage done was greater than was foreseen or the particular act done was not contemplated or intended by them.

*Thompson v. Johnson*, 180 F.2d 431, 433-34 (5th Cir. 1950). See Prosser and Keeton on the Law of Torts, *Joint Tortfeasors* § 46 (5th ed. 1984). As a general rule, one who counsels, commands, directs, advises, assists, or aids and abets another individual in commission of a wrongful act or tort is responsible to the injured party for the entire loss or damage. See, *Dickinson v. Lawson*, 125 Neb. 646, 251 N.W. 656 (1933); 74 Am. Jur. 2d *Torts* § 66 (1974). See, also, *Acree v. North*, 110 Neb. 92, 192 N.W. 947 (1923); *Cooney v. Burke*, 11 Neb. 258, 9 N.W. 57 (1881).

Anderson contends that Bergman's petition failed to state a cause of action based on the theory that Anderson acted in concert with others and aided and abetted in the commission of an assault or battery on Bergman.

> The failure of a petition to state a cause of action may be challenged at any time during the pendency of the litigation. Gerard v. Steinbock, 169 Neb. 828, 101 N.W.2d 194. An objection to the introduction of any evidence on

the ground that the petition fails to state a cause of action is a recognized practice in this state; and if the petition is totally defective, the objection should be sustained. Gerard v. Steinbock, *supra*.

Where the objection is not made until after the trial has commenced, the petition will be liberally construed and sustained if possible. Welch v. Adams, 87 Neb. 681, 127 N.W. 1064; Elvidge v. Brant, 131 Neb. 1, 267 N.W. 169. The petition will be liberally construed in the light of the entire record; and if the essential elements of the plaintiff's case may be implied from the petition by reasonable intendment, it will be held sufficient. Dickinson v. Lawson, 125 Neb. 646, 251 N.W. 656; Bradway v. Higgins, 152 Neb. 724, 42 N.W.2d 627; Goger v. Voecks, 156 Neb. 696, 57 N.W.2d 621. Any error or defect in the pleadings which does not affect the substantial rights of the adverse party must be disregarded. [Neb. Rev. Stat.] § 25-853 [(Reissue 1985)]; Dickinson v. Lawson, *supra*. *Gibbs v. Johns*, 183 Neb. 618, 619-20, 163 N.W.2d 110, 111 (1968). See, also, *Contois Motor Co. v. Saltz*, 198 Neb. 455, 253 N.W.2d 290 (1977). "Under a code system of pleading, such as Nebraska's, it is not necessary to state a cause of action in any particular form. It is only necessary to plead the facts, and not the theory of recovery." *Parriott v. Drainage Dist. No. 6, ante* p. 123, 126, 410 N.W.2d 97, 100 (1987). See *Waite v. Samson Dev. Co.,* 217 Neb. 403, 348 N.W.2d 883 (1984). Bergman's petition specifically alleged that those attacking Bergman were under Anderson's "direction," and such allegation permits the inference that Anderson actively assisted, participated, and aided and abetted in the attack on Bergman. We conclude, upon our review of the pleadings, that Bergman stated sufficient facts to support a theory that Anderson acted in concert with others and aided and abetted in the commission of an assault or battery.

Anderson also complains that the court's instruction on aiding and abetting was incorrect. In particular, Anderson contends that " '[m]ere encouragement or assistance' " in the commission of the unlawful act is not sufficient, but that the definitional "standard" is one of "substantial" encouragement

or assistance. Brief for Appellant at 11. In this case, the trial court adapted NJI 14.12, an instruction in a prosecution for a criminal offense, for use as an instruction in a civil action. Presently, under our criminal law, the standard requiring "mere encouragement or assistance" in commission of a criminal act is sufficient to impose criminal liability for "aiding and abetting." See, *State v. Bennett*, 219 Neb. 601, 365 N.W.2d 423 (1985); *State v. True*, 210 Neb. 701, 316 N.W.2d 623 (1982). We decline to adopt a more stringent standard in our tort law than that which presently prevails in our criminal law. Therefore, we find that the trial court properly instructed the jury regarding Anderson's acting in concert with and aiding and abetting others in the commission of an assault or battery on Bergman.

Finally, we address Anderson's fourth and last assignment of error. We note that the jury returned a general verdict in favor of Bergman. We are unable to determine what part or amount, if any, of the verdict represents property damage concerning Bergman's car. The cost of repair to Bergman's car, as an item of damage, may or may not be included in the amount of the general verdict and, under the circumstances, cannot be separated from the other damages awarded by the jury. Thus, we are unable to determine whether the jury actually awarded to Bergman property damage in excess of the amount stated in Bergman's petition.

AFFIRMED.